SENTENCIA
La confianza del Pueblo en su Judi-catura es indispensable para nues-tra vida en sociedad. En nuestra de-mocracia, el pueblo necesita sentirse confiado en que cuenta con una Rama Judicial eficiente a la cual llevar sus controversias y recla-mar sus derechos. El pueblo nece-sita sentirse confiado en que no hay necesidad de tomar la justicia en sus manos. Siendo así, un ataque a la confianza en la Rama Judicial es un ataque a la convivencia pacífica y ordenada en nuestro país. —Hon. Federico Hernández Denton, Juez Presidente, 173ra Asamblea del Co-legio de Abogados de Puerto Rico, 7 de septiembre de 2013.(1)
Nos encontramos ante una controversia de alto interés público que requiere la intervención inmediata de este Tribunal. En el caso de autos, los demandantes aducen que las nominaciones de funcionarios públicos, las cuales inclu-yen a jueces, fiscales y procuradores, son nulas y contra-rias a los postulados de la Constitución de Puerto Rico, LPRA, Tomo 1. En específico, reclaman que los nombra-mientos fueron confirmados por el Senado de Puerto Rico sin facultad para ello, por entender que las nominaciones impugnadas debían contener un grado mayor de especifici-dad en la convocatoria del Gobernador de Puerto Rico. A su vez, impugnan el nombramiento del Hon. Edgardo Rivera *613 García, Juez Asociado de este Tribunal, al sostener que fue confirmado en una sesión extraordinaria no convocada por el Gobernador o, en la alternativa, que su nominación fue en receso y quedó sin efecto, al levantarse la sesión ordina-ria siguiente.
Este Tribunal tiene la facultad de atender mediante el recurso de certificación, a ser expedido discrecionalmente, asuntos pendientes ante el Tribunal de Primera Instancia o el Tribunal de Apelaciones cuando, entre otras, se planteen cuestiones noveles de derecho, o se planteen cuestiones de alto interés público que incluyan cualquier cuestión constitucional sustancial al amparo de la Constitución de Puerto Rico. Véanse U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 272-273 (2010), y casos allí citados.(2) No podemos ignorar que los nombramientos de funcionarios de la Rama Ejecutiva y de la Rama Judicial están revestidos del más alto interés público. Estos deben ser conforme a los procesos establecidos. La falta de atención inmediata a los reclamos de los demandantes socavaría irremediablemente la confianza depositada del pueblo en nuestro sistema de justicia y mancillaría la reputación de los funcionarios que dedican su vida al servicio público.
Por lo tanto, habiendo examinado detenidamente las posturas de la parte demandante y de los peticionarios, y en ausencia de escollo alguno para disponer de este asunto de alto interés público, este Tribunal expide el auto de cer-tificación y procedemos a atenderlo, conforme a la Regla 50 de este Tribunal.(3)
*614 HH
Los Ledos. Arturo Nieves Huertas y Luis Raúl Albala-dejo (demandantes) instaron dos demandas en las que impugnan los nombramientos de varios funcionarios públicos. El 10 de julio de 2013 presentaron el caso Arturo Nieves Huertas, Luis Raúl Albaladejo v. Hon. Alejandro García Padilla y otros, KPE2013-3780,(4) y el 17 de septiembre de 2013 el caso civil Arturo Nieves Huertas, Luis Raúl Albaladejo v. Hon. Edgardo Rivera García y otros, KPE2013-4660.
En el caso KPE2013-3780, los letrados arguyen que el exgobernador Luis Fortuño Burset y el Senado de Puerto Rico violaron la Constitución de Puerto Rico al nombrar a sobre cien personas para cargos a la Judicatura, fiscales, jueces administrativos y otros funcionarios públicos. Sos-tienen que los referidos nombramientos son nulos y que ello conllevará que sus determinaciones y decisiones así lo sean. Señalan que eso repercute en daños y pérdidas de sus representados así como al ordenamiento y al interés público. Los letrados discuten que los nombramientos son nulos, ya que estos fueron confirmados en una sesión ex-traordinaria sin que se cumpliera con lo dispuesto en el Art. Ill, Sec. 10 de la Constitución de Puerto Rico, LPRA, Tomo 1. Específicamente, alegan que las órdenes ejecuti-vas emitidas, convocando las sesiones extraordinarias, no especificaron ninguno de los nombramientos realizados.
Por otra parte, en el caso KPE2013-4660 los demandan-tes y el Senador Cirilo Tirado Rivera sostienen que el nom-bramiento del Juez Asociado Señor Rivera García es nulo, al realizarse en una sesión extraordinaria convocada por el *615 Presidente del Senado o, en la alternativa, en una sesión en receso, por lo que quedó sin efecto al levantarse la próxima sesión ordinaria. Por lo tanto, afirman que se violó lo dispuesto en el Art. III, Sec. 10 y el Art. IV, Sec. 4 de la Constitución de Puerto Rico, LPRA, Tomo 1.
Así, en ambas peticiones, los demandantes solicitan que se dicte sentencia para declarar los nombramientos nulos, ordenar el cese y desista del ejercicio del cargo y funciones, ordenar iniciar un procedimiento de quo warranto y cual-quier otro remedio que proceda en derecho.
Ante tales reclamaciones, se presentaron varias mocio-nes de desestimación por las partes y el Gobierno de Puerto Rico.(5) En todas ellas se aduce que los demandan-tes carecen de legitimación activa para presentar su causa de acción; que conceder el remedio solicitado requiere la intervención indebida en las funciones de la Rama Ejecu-tiva y la Rama Legislativa, ya que se viola la separación de poderes, y que la parte demandante carece de una recla-mación que justifique la concesión de un remedio, entre otras.
HH I — I
Como principio rector de nuestro ordenamiento, los tribunales debemos intervenir en casos justiciables. La justi- *616 ciabilidad requiere que la controversia sea definida y con-creta entre las partes jurídicas, el interés sea real y sustancial que permita un remedio específico y la polémica sea propia para una determinación judicial. ELA v. Aguayo, 80 DPR 552, 584 (1958).
Como parte de que la controversia sea justiciable, se requiere que los demandantes posean legitimación activa para instar las demandas de epígrafe. Los tribunales tene-mos el deber de examinar, como cuestión de umbral, si los demandantes ostentan legitimación activa para incoar una acción o reclamar determinado remedio. Este es un elemento necesario para la debida adjudicación de los méritos de una controversia, según el principio de justiciabilidad. Hernández Torres v. Gobernador, 129 DPR 824, 835 (1992).
Cuando se cuestiona la legitimación de una parte al con-testar la demanda, debemos asumir que las alegaciones son ciertas y evaluar su causa de acción de la manera más favorable para el demandante. Col. Ópticos de P.R. v. Vani Visual Center, 124 DPR 559, 567 (1989). Hemos interpretado la legitimación activa liberalmente. Sin embargo, ello no implica que “la puerta está abierta de par en par para la consideración de cualquier caso que desee incoar cualquier ciudadano en alegada protección de una política pública”. Salas Soler v. Srio. de Agricultura, 102 DPR 716, 723-724 (1974). Véase, además, Fund. Surfrider y otros v. A.R.Pe., 178 DPR 563, 573 (2010).
Reiteradamente hemos sostenido que una parte deman-dante posee legitimación activa si cumple con los requisitos siguientes, a saber: (1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, y no abs-tracto o hipotético; (3) existe conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge bajo el palio de la Constitución o de una ley. Véanse: Sánchez et al. v. Srio. de Justicia et al., 157 DPR 360, 371 (2002); Hernández Torres v. Gobernador, supra, pág. 835.
*617 rH hH ( — I
En el caso de marras, los demandantes sostienen que poseen legitimación activa para cuestionar los nombra-mientos efectuados por sus obligaciones al amparo del Có-digo de Ética Profesional, 4 LPRA Ap. IX. Aducen que es de primordial importancia instituir y mantener un orden ju-rídico íntegro y eficaz, que goce de completa confianza y apoyo de la ciudadanía. Aluden que es su deber hacer una aportación propia y cabal a la mejor administración de la justicia. Señalan que se trata de la protección de la ejecu-ción de un derecho público de naturaleza democrática.(6)
Los demandantes Nieves y Albaladejo arguyen que sus daños son inminentes y están vinculados a su argumento de que los nombramientos son inconstitucionales. Por lo tanto, recalcan que los funcionarios en cuestión ejercen ilegítima-mente sus funciones. Indican que los trámites judiciales realizados ante estos funcionarios corren el riesgo de ser anulados o declarados nulos por haber sido tomados por fun-cionarios cuyos nombramientos, alegan, son ilegales.
No albergamos la menor duda de que los demandantes carecen de legitimación activa. Su reclamo, básicamente, implicaría que cualquier persona pueda impugnar o hacer cualquier reclamación ante la violación de cualquier ley sin que tenga la necesidad de exponer el daño específico que tal actuación le provoca. Los demandantes, escueta e hipo-téticamente, reclaman una posibilidad de nulidad de los dictámenes emitidos por estos funcionarios. Al así hacerlo, el planteamiento no tan solo está ausente de un daño particular, real, palpable y concreto, sino que el mismo no pro-cede ante el hecho de que este Tribunal ha aplicado la doc-trina de funcionario de facto a la figura de los jueces. Mediante esta doctrina se imparte validez a los actos ofi-ciales de personas, que so color de autoridad, ejercen car- *618 gos que existen legalmente y en los cuales el público o ter-ceras personas están interesados, cuando el cumplimiento de tales actos oficiales es para beneficio del público y no para el beneficio personal. Véase Fernández v. Corte, 71 DPR 161 (1950).
En cuanto al reclamo instado en el caso civil KPE2013-3780, el entonces Gobernador convocó mediante la Orden Ejecutiva OE-2012-68 la quinta sesión extraordinaria de la decimosexta Asamblea Legislativa. Mediante ésta, entre otras, estableció lo siguiente:
POR CUANTO: Al presente existen asuntos de suma impor-tancia, incluyendo nombramientos ejecutivos y judiciales, que requieren actuación inmediata de la Asamblea Legislativa. (Énfasis suplido).
Ante este panorama, debe quedar claro que los nombra-mientos así efectuados son válidos. La convocatoria para celebrar la quinta sesión extraordinaria claramente dispo-nía que existían asuntos importantes que atender. Especí-ficamente, el Gobernador indicó que incluían “nombra-mientos ejecutivos y judiciales”. Ciertamente, cuando el Gobernador de turno convocó la sesión extraordinaria, lo hizo dentro de sus facultades constitucionales. Además, consciente de que la propia Constitución de Puerto Rico limita en estos casos los asuntos por atender a los especi-ficados en su convocatoria o mensaje especial, expresó en su orden ejecutiva no tan solo las medidas legislativas, sino la importancia de considerar los nombramientos eje-cutivos y judiciales. Por lo tanto, no existe razón alguna para sostener que estos nombramientos son nulos e ilegales.
IV
Atendamos si el senador Cirilo Tirado posee legitima-ción activa para cuestionar, en esta etapa, los procedimien-tos legislativos que nos ocupan, de los cuales formó parte.
*619 Este Tribunal ha sido enfático al establecer que no pro-cede permitir a un demandante, que no alega un daño explícito, plantear a esta Curia resolver importantes cuestiones constitucionales. Ello redundaría en un potencial abuso del proceso judicial, atentando contra la función de esta Rama, en relación con las otras dos ramas de gobierno. Fund. Arqueológica v. Depto. de la Vivienda, 109 DPR 387, 392 (1980).
Es en este sentido que juega un papel crucial la doctrina de separación de poderes. La misma está expresamente consagrada en la Sec. 2 del Art. I de la Constitución de Puerto Rico, LPRA, Tomo 1. La separación de poderes entre las tres ramas responde a dos criterios, a saber: (1) proteger la libertad de los ciudadanos, pues el poder no se concentra en una sola rama de Gobierno, y (2) salvaguardar la independencia de cada una de estas, ya que se evita que una de ellas interfiera o domine con el poder de las otras. P.I.P. v. ELA et al., 186 DPR 1 (2012); Acevedo Vilá v. Meléndez, 164 DPR 875, 882—883 (2005); Colón Cortés v. Pesquera, 150 DPR 724, 750 (2000).
Ahora bien, cada una de las tres ramas del Gobierno no debe desempeñarse con entera abstracción de las demás. Ello ocurre porque el propósito de la separación de poderes es generar un equilibrio dinámico entre poderes de igual rango. Véase Misión Ind. P.R. v. J.P., 146 DPR 64, 89 (1998).
En lo particular, la Constitución de Puerto Rico dispone el procedimiento para los nombramientos de los jueces al establecer que
[l]os jueces serán nombrados por el Gobernador con el consejo y consentimiento del Senado. Los jueces del Tribunal Supremo no tomarán posesión de sus cargos hasta que sus nombramien-tos sean confirmados por el Senado y los desempeñarán mien-tras observen buena conducta. Los términos de los cargos de los demás jueces se fijarán por ley y no podrán ser de menor dura-ción que la prescrita para los cargos de jueces de igual o equi-valente categoría existentes a la fecha en que comience a regir esta Constitución. Todo lo relativo al nombramiento de los de- *620 más funcionarios y de los empleados de los tribunales, se determinará por ley. (Énfasis suplido). Art. V, Sec. 8, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 417.
Es por ello que la facultad de nombramiento es compartida entre el Poder Ejecutivo y el Poder Legislativo. Véanse: Nogueras v. Hernández Colón, 127 DPR 638, 650 (1991); Hernández Agosto v. López Nieves, 114 DPR 601, 620 (1983).
No debe existir duda de que la Asamblea Legislativa es un cuerpo de carácter continuo durante el término de su mandato. Art. III, Sec. 10 de la Constitución de Puerto Rico, supra. En igual medida, tampoco se puede cuestionar su capacidad o facultad para adoptar sus propias reglas. Art. Ill, Sec. 9 de la Constitución de Puerto Rico, LPRA, Tomo 1.
En lo particular a los procesos de nombramiento y la con-figuración de las sesiones celebradas por la Asamblea Legis-lativa, es-menester destacar que, en el ejercicio de sus facultades, el Senado aprobó el Reglamento del Senado, 12 de enero de 2009, R. del S. 27, 16ta Asamblea Legislativa, Ira Sesión Ordinaria, vigente al momento de los hechos. Este dispone en su Sección 21.3 que las sesiones extraordinarias se celebran en cualquier fecha de un año, en la cual no se celebre una sesión ordinaria. Estas pueden ser convocadas por el Gobernador o por el Presidente del Senado. Cuando la sesión extraordinaria es convocada por el Gobernador, la Sección 21.3 dispone que solo puedan considerarse los asuntos, proyectos de ley y resoluciones conjuntas incluidas en la Convocatoria del Gobernador. Sin embargo, el Senado, en el ejercicio de sus funciones constitucionales e inherentes, po-drá considerar cualquier expresión o asunto bajo la jurisdic-ción del Cuerpo, incluyendo aquellos nombramientos envia-dos por el Gobernador y pendientes de consentimiento por el Senado. La sabiduría de estas normas no constituye mate-ria para juzgar por los tribunales, a menos que exista una infracción constitucional. Lozada Sánchez et al. v. JCA, 184 *621 DPR 898, 925-926 (2012); Noriega Rodríguez v. Jarabo, 136 DPR 497, 533 (1994).
Tal disposición reglamentaria no contraviene la Consti-tución de Puerto Rico. Por el contrario, es cónsona con su Art. Ill, Sec. 10, supra, págs. 390-391, en el que se establece que “cuando el Gobernador convoque a la Asamblea Legis-lativa a sesión extraordinaria sólo podrá considerarse en ella los asuntos especificados en la convocatoria o mensaje especial que el Gobernador le envíe en el curso de la sesión, la cual no podrá extenderse por más de veinte días naturales”. (Enfasis suplido). Véase, además, Art. TV, See. 4 de la Constitución de Puerto Rico, supra. Es decir, el hecho de que el Gobernador ostente la discreción para convocar a una sesión extraordinaria no menoscaba la facultad de un Cuerpo de la otra Rama de Gobierno para autoconvocarse, en una fecha que no conflija con la convocatoria del Ejecu-tivo, para descargar los deberes ministeriales dispuestos por la propia Constitución, como fue en este caso el consentir a las nominaciones de determinados funcionarios públicos.
Las disposiciones antes mencionadas revelan claramente que el poder de nombramiento de estos funcionarios públi-cos es compartido. Por un lado, el Gobernador nomina al funcionario, pero su nombramiento requiere el aval del Senado. Igualmente, resalta que, tanto el Gobernador como el Presidente del Senado tienen la facultad de convocar para la celebración de una sesión extraordinaria. Claro está, este proceder responde a la facultad inherente de ese cuerpo le-gislativo y el carácter continuo durante el término de su mandato. La única limitación que se impone es que cuando el Gobernador ejerce su facultad para convocar una sesión extraordinaria solamente se podrán atender aquellos asun-tos especificados en la convocatoria o en el mensaje especial que el Gobernador envíe en el curso de la sesión. Por su parte, durante una sesión extraordinaria convocada por el Presidente del Senado se podrán atender aquellos nombra-mientos enviados por el Gobernador.
*622 Es importante señalar que la Sección 47.3(c) del Regla-mento del Senado dispone, a su vez, que:
(c) Nombramiento incluido en la convocatoria de una Sesión Extraordinaria: El Senado, a su discreción, podrá considerar, informar y tomar acción sobre dicho nombramiento. Si no se tomare acción definitiva al respecto, o si los trámites no se concluyeran por cualquier razón, el nombramiento seguirá en vigor hasta la conclusión de la siguiente Sesión Ordinaria, a menos que el Senado decidiera actuar sobre el nombramiento en otra Sesión Extraordinaria convocada por el Gobernador o el Presidente.
Esta disposición tiene el objetivo de mantener la inhe-rencia del Senado en el consentimiento de los nominados. Ciertamente, ante la nominación de un candidato reali-zada por el Gobernador, corresponde al Senado evaluar si imparte su consentimiento.
El proceso de confirmación de estos funcionarios públi-cos requiere que el Gobernador someta la correspondiente nominación al Senado, quien la confirma o no. Una vez obtenido el consejo y consentimiento del Senado, el Gober-nador extiende el nombramiento correspondiente y luego el funcionario presta el juramento oficial para la toma de po-sesión de su cargo.
V
Examinado el trámite procesal legislativo, examinemos si se afectaron las prerrogativas legislativas del Senador Ci-rilo Tirado, según planteado en el caso civil KPE2013-4660.
El nombramiento del Juez Asociado Señor Rivera García ocurrió en una sesión extraordinaria convocada por el Pre-sidente del Senado. Como hemos expresado, la Constitución de Puerto Rico establece que la Asamblea Legislativa es un cuerpo de carácter continuo durante el término de su man-dato con capacidad plena para regular sus procedimientos.
Conforme al Reglamento del Senado, su Presidente con-vocó a una sesión extraordinaria para atender asuntos bajo *623 la jurisdicción de ese Cuerpo. Durante ésta, el 4 de agosto de 2010, el Gobernador sometió la designación del Juez Asociado Señor Rivera García para su consejo y consentimiento. Diario de Sesiones de 9 de agosto de 2010, 2da Sesión Extraordinaria del Presidente del Senado, 16ta Asamblea Legislativa, Vol. LVIII, Núm. 1, pág. 21443. El proceso de su nominación consta en el Diario de Sesiones del 9 de agosto de 2010, supra, págs. 21443-21482, donde se constata que se cumplió a cabalidad con todo el proceso para el nombramiento del referido designado. Incluso, des-taca que las recomendaciones fueron favorables y que el candidato gozaba de la reputación moral, la trayectoria y la capacidad intelectual necesaria para ejercer el cargo que ocupa hoy.
En dicho proceso, miembros de la delegación del partido político al cual pertenece el Senador Cirilo Tirado cuestio-naron la celeridad de los procedimientos. Sin embargo, en ningún momento se planteó que la sesión extraordinaria no fuera convocada por el Presidente del Senado, conforme al reglamento adoptado. Tampoco hubo alegación de índole alguna en cuanto a que el proceso fuera en contravención a la Constitución de Puerto Rico.
Ante ese cuadro, y como agravante, a estas alturas re-sulta inmeritorio el reclamo del Senador Cirilo Tirado. En cuanto a este demandante, no podemos obviar que los le-gisladores carecen de legitimación activa para impugnar la validez de un acto únicamente en representación de la ciu-dadanía general. Estos tienen que presentar criterios más convincentes. No existe un ápice de prueba que las actua-ciones cuestionadas afectaran el ejercicio y deberes del legislador. Véase Noriega Rodríguez v. Jarabo, supra, pág. 497. El récord legislativo analizado evidencia la participación activa de la minoría en ese nombramiento. Incluso el propio senador votó contra el candidato. Tampoco podemos pasar por alto que los planteamientos esgrimidos impug-nan actuaciones reglamentarias que el legislador ha *624 avalado. Como los otros demandantes, según señalamos anteriormente, éste también carece de legitimación activa.
VI
Por último, debemos evaluar si la conducta desplegada por los demandantes es temeraria o frívola. A estos efectos la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, establece que cuando cualquier parte haya procedido con temeridad o frivolidad, el tribunal tendrá que imponer en su sentencia al responsable el pago de una suma por hono-rarios de abogado que el juzgador entienda corresponde a la conducta desplegada. Véanse: Meléndez Vega v. El Vocero de PR, 189 DPR 123 (2013); P.R. Oil v. Dayco, 164 DPR 486, 511 (2005).
El concepto de temeridad es amplio. La conducta teme-raria es una actitud que se proyecta sobre el procedimiento y afecta el buen funcionamiento y administración de la justicia. A su vez, sujeta a una parte inocente a la ordalía del proceso judicial, exponiéndola a gastos innecesarios y a la contratación de servicios profesionales que afectan su peculio. Fernández v. San Juan Cement Co., Inc., 118 DPR 713, 718-719 (1987). Mediante la imposición de honorarios por temeridad se penaliza a un litigante que, obcecado por un afán desprovisto de fundamentos, obliga a otro a defen-derse, lo que le causa molestias, gastos, trabajo e inconvenientes. Soto v. Lugo, 76 DPR 444 (1954).
La parte peticionaria solicitó la imposición de honora-rios por temeridad contra los demandantes. Para ello, ex-presó que en múltiples ocasiones los letrados han instado recursos, abusando de los procedimientos judiciales, con el ánimo de mancillar su reputación. Así, señala que los le-trados impugnaron su nominación al sostener que esta no gozaba de los años de experiencia. De igual forma, presen-taron un recurso de injunction, en el que impugnaron y cuestionaron sus cualificaciones para intentar impedir su *625 confirmación.(7) En dicho proceso, solicitaron recusar al juez que presidía los procedimientos y revisaron tal dene-gatoria sin éxito.(8) El foro primario declaró “no ha lugar” la solicitud de injunction e injunction preliminar. Nueva-mente, los demandantes acudieron ante el Tribunal de Apelaciones.(9) De igual manera, los demandantes acudie-ron ante el Secretario de Justicia para solicitar que se re-cuperara el cargo que ocupa la Juez Superior, a pesar de existir una determinación en contra de sus reclamos. Ante la ausencia de una contestación, los demandantes presen-taron el pleito de autos. En éste, nuevamente, solicitaron la recusación del juez de instancia que atendía los asuntos y al no proceder la misma, solicitaron la revisión al Tribunal de Apelaciones en el recurso KLCE2013-1030 y poste-riormente ante esta Curia.(10)
Los hechos aludidos reflejan una actitud contumaz de los demandantes contra los funcionarios que ejercen váli-damente sus puestos. Ante tales actuaciones, la peticiona-ria ha tenido que defenderse de ataques a su honra y a su persona. Los demandantes, proyectan una conducta des-medida que afecta la administración de la justicia. No cabe duda que actuaron de forma temeraria. Ante ello, es nues-tra obligación imponer a los demandantes de forma solida-ria el pago de honorarios de abogado por temeridad, por la cantidad de $10,000 a favor de la parte peticionaria. Regla 44.1 de Procedimiento Civil, supra.
VII
Por todo lo expuesto, se emite el auto de certificación y resolvemos que los demandantes carecen de legitimación *626 activa para instar las demandas de epígrafe. Por lo tanto, al amparo de la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, y sin ulterior procedimiento, se decla-ran “con lugar” las mociones de desestimación presentadas en los casos de autos. Se impone a los demandantes $10,000 en honorarios de abogado por temeridad a favor de la peticionaria.

Notifíquese inmediatamente por teléfono, facsímil y por la vía ordinaria. Publíquese.

Así lo pronunció, manda el Tribunal y certifica la Secre-taria del Tribunal Supremo. El Juez Presidente Señor Her-nández Denton, la Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez emitieron un voto particular de no intervención. La Jueza Asociada Se-ñora Pabón Charneco no intervino. El Juez Asociado Señor Rivera García no interviene.
(Fdo.) Aida Ileana Oquendo Graulau Secretaria del Tribunal Supremo
Voto particular de no intervención del
Juez Presidente Se-ñor Hernández Denton, la Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez.
Hoy, cuatro Jueces de este Tribunal incurren en otro ejercicio desmedido de poder al acceder a intervenir en una controversia a destiempo, disponer de esta de forma atro-pellada y violar los principios de autolimitación judicial. Con el pretexto de proteger la confianza del pueblo en el sistema judicial, acaban burlando las nociones más básicas de la justicia. Nos rehusamos a formar parte de esta des-afortunada actuación y, en esta etapa procesal, emitir jui-cio alguno sobre los méritos de la demanda presentada.
En este caso se cuestiona la validez de varios nombra-mientos de funcionarios públicos, incluyendo el del Juez *627 Asociado de este Tribunal, Señor Rivera García. Ello, sin embargo, no debe impulsarnos a dejar a un lado la pruden-cia y la cautela para disponer precipitadamente de un caso recientemente incoado en el Tribunal Superior de San Juan, sin que este haya tenido oportunidad de dilucidarlo. Independientemente de los méritos de la causa de acción, el proceso está en sus inicios; tan solo se han presentado las demandas y unas mociones de desestimación. Ni si-quiera se ha emplazado a todos los demandados.(1) A pesar de esto, este Tribunal acoge la petición de certificación y la resuelve inmediatamente sin brindar oportunidad para que los demandantes se expresen, prescindiendo de los tér-minos que normalmente aplican a la consideración de los casos que se nos someten. 4 LPRAAp. XXI-B. Este proce-der es otra manifestación del uso abusivo del recurso de certificación por este Tribunal.
En este camino tan desatinado se penaliza a los deman-dantes severamente por plantear un reclamo constitucio-nal de alto interés público, sin permitirles siquiera expre-sarse y en violación a su derecho a un debido proceso de ley. Los cuatro jueces que ordenan y resuelven la certifica-ción, imponen a los demandantes el pago de $10,000 en honorarios por temeridad sin mayor análisis ni discusión de los factores que jurisprudencialmente hemos estable-cido para determinar la temeridad y la penalidad corres-pondiente en cada caso. La supuesta conducta temeraria de los demandantes, su gravedad y la proporcionalidad de la sanción se evaluaron únicamente en función de los suje-tos demandados. Sin duda, esta acción puede tener un efecto inhibitorio al disuadir a los ciudadanos de acudir en el futuro a los tribunales a presentar sus reclamos.
Aunque concluye que los demandantes no tienen legiti- *628 mación activa para instar el pleito de epígrafe, el Tribunal insiste en resolver el asunto en los méritos y determinar que los nombramientos en cuestión son válidos. Sabemos que una vez se concluye que la parte demandante carece de legitimación activa, lo único que procede es la desestima-ción de la causa. En cambio, los Jueces que en esta ocasión componen el Tribunal resuelven los méritos de las deman-das, en contravención a las doctrinas de justiciabilidad y de autolimitación judicial.
Siendo ello así, no habremos de avalar con nuestra par-ticipación un curso de acción tan absurdo como desafortu-nado.

l) Comunicado de prensa: “Participa Hernández Denton de la 173ra Asamblea del Colegio de Abogados de Puerto Rico”, 9 de septiembre de 2013, en: http:// www.ramajudicial.pr/Prensa/2013/09-09-13.htm.

 Recuérdese que en Alvarado Pacheco y otros v. ELA, 188 DPR 594 (2013), una mayoría de este Tribunal declaró inconstitucional las disposiciones contenidas en la Ley Núm. 18-2013 que pretendían alterar el mecanismo de certificación intra-jurisdiccional reconocido en el Art. 3.002 de la Ley Núm. 201-2003, según enmendada, conocida como la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 LPRA sec. 24s).

 El 30 de septiembre de 2013, la Hon. Liza Fernández Rodríguez solicitó la certificación de los casos consolidados de epígrafe. El 2 de octubre de 2013 el Hon. Edgardo Rivera García se unió a esa petición mediante la Moción Solicitando Per-miso para Unirse al Recurso de Certificación presentado por la Hon. Liza Fernández Rodríguez. Por su parte, los recurridos presentaron el 2 de octubre de 2013 una *614 Moción en Oposición a “Moción Urgente para que se paralicen los procedimientos en el Tribunal de Primera Instancia” y Sobre Memorando en Oposición a que se Expida el Auto de Certificación.

 A este momento, los demandantes no han emplazado a los demandados. A pesar de ello, la parte peticionaria se sometió voluntariamente a la jurisdicción de este Tribunal.

 La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, “establece los fundamentos por los que una parte puede solicitar la desestimación de una demanda presentada en su contra, a saber: falta de jurisdicción sobre la materia o la persona, insuficiencia del emplazamiento o su diligenciamiento, dejar de exponer una reclamación que justifique la concesión de un remedio o dejar de acumular una parte indispensable”. Informe de Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo de Puerto Rico, marzo 2008, pág. 134. Al evaluar una moción de desestimación debemos dar por ciertas y buenas todas las alegaciones fácticas hechas en la demanda. Además, hay que interpretarlas a favor de la parte demandante. Harguindey Ferrer v. U.I., 148 DPR 13 (1999). Así pues, para desestimar un caso por falta de jurisdicción sobre la materia “es necesario determinar si, tomando como cierto lo alegando por el demandante, el foro tiene jurisdicción para atender el reclamo”. íd., pág. 30.
Una vez surge por indicación de las partes, o de algún otro modo que el tribunal carece de jurisdicción, la Regla 10.8(c) de Procedimiento Civil, 32 LPRA Ap. V, que ordena la desestimación del pleito.

 Mediante Moción en Cumplimiento de Orden presentada el 22 de julio de 2013, Apéndice, págs. 237-242.

 Caso Civil Núm. KPE2012-4117.

 Caso ante el Tribunal de Apelaciones, KLCE2013-00047.

 El caso ante el Tribunal de Apelaciones, KLAN2013-00299.

 El recurso presentado ante este Tribunal está identificado de forma alfanu-mérica CC-2013-470.

 Aunque el Juez Asociado Señor Rivera García ya fue debidamente empla-zado, la mayoría de los cerca de cien demandados aún no lo han sido. Incluso, la peticionaria, Hon. Liza Fernández Rodríguez, por no haber sido emplazada, se some-tió voluntariamente a la jurisdicción de este Tribunal para poder presentar la peti-ción de certificación.